John G. O'HARA, Appellant,

v.

Louis J. HEXTER, Appellee.

No. 19800.

Court of Civil Appeals of Texas, Dallas.

May 23, 1979.

Rehearing Denied July 10, 1979.

Clyde M. Marshall, Jr., Fort Worth, for appellant.

Wm. Andress, Jr., Dallas, for appellee.

Before GUITTARD, C. J., and STOREY and HUMPHREYS, JJ.

HUMPHREYS, Justice.

Appellant, John G. O'Hara, appeals from a directed verdict. Louis J. Hexter had sued on an alleged $40,000 loan evidenced by a letter agreement and the First National Bank in Dallas became the substituted plaintiff upon Hexter's death. Many of appellant's twenty-one points of error are but shades of the other and the principal issue concerns the application in this case of Tex.Civ.Stat.Ann. art. 3716 (Vernon 1928), commonly called "The Dead Man's Statute," and the parol evidence rule. We hold the directed verdict was proper and any error in exclusion of evidence was harmless, and affirm the trial court's judgment.

The nature of the suit was stated by this court in the first appeal of this case, *O'Hara v. Hexter*, 550 S.W.2d 379, 381 (Tex.Civ. App.—Dallas 1977, writ ref'd n.r.e.) as follows:

This controversy arose through a joint venture arrangement between Hexter and O'Hara to purchase several buildings. As a part of various oral and written agreements between the parties with respect to this venture, they executed the following letter agreement which is the basis of this suit. That letter reads:

October 8, 1975

Dear John:

In accordance with our agreement, there are attached three checks:

Check # 5559 payable to you and Home State Savings Association in the sum of $18,000.00

Check # 5560 payable to you and Horwitz Funding Corporation in the sum of $18,000.00

Check # 5561 payable to you in the sum of $3,390.00

We have borrowed $40,000.00 and from it have prepaid the interest of $40,000.00 for sixty days which amount is $610.00. The remainder of that loan, therefore, is $3,390.00 which is the amount of the check payable to you.

It is distinctly understood that you will not endorse the checks nor cash your check until there has been executed the agreements as prepared by Holt Smith. Should there be any complications or hitches in the execution, call me from Cincinnati and we can determine what we can give predicated upon their objections.

It is also understood that the $40,000.00 is a loan to you and is not to be construed directly or indirectly as affecting my capital gains on my sale of my share of the option agreement.

Very truly yours,

s/ Louis J. Hexter

Louis J. Hexter

This letter is certainly the way I understand the deal.

s/ John O'Hara

Because the funds referred to in this letter were expended without obtaining the desired contract for a loan or loan commitment, Hexter sued O'Hara upon the language that "the $40,000.00 is a loan to you."

In that appeal this court held it was an abuse of discretion by the trial court to deny O'Hara's motion for a new trial. He had answered but failed to appear for trial and judgment was rendered against him following a hearing before the court. On remand, trial was to a jury but verdict was instructed for appellee. In considering an instructed verdict, we must determine if there is any evidence to support the submission of an issue and draw all inferences in

favor of appellant. *Henderson v. Travelers Insurance Co.*, 544 S.W.2d 649, 650 (Tex. 1976).

Appellee's entire proof consisted of the offer and admission in evidence of a photocopy of the quoted letter and the three paid checks described therein. Each separately numbered exhibit was offered by verbal tender without calling any witness or offering supporting testimony, and was admitted over appellant's objections. Appellee immediately rested. On appeal, appellant asserts the proper predicate was not laid for these documents.

At trial, appellant objected to the letter "on the grounds no proper proof of the letter has been laid to show who signed it or it was sent or it was received and for the further reason that it appears on its face to be a copy and not the original." His objection to each of the three checks was

> For the reason that there's been no proof whatsoever concerning the execution, delivery, or the negotiation of said checks; for the further reason they appear to be on their face copies without accounting for nonproduction of the originals; and for the further reason that to offer them without proof concerning thereon on the basis of the negotiation is unfair to the Defendant and his rights in this case.

We sustain the trial court's admission of these photocopies in evidence and hold as a matter of law no other predicate was required in this case for the reason appellant has judicially admitted that he penned the note at the bottom and signed his name thereto before the three checks were cashed. After the case was remanded for a new trial, appellant filed an amended answer alleging:

> Defendant denies that his "acceptance" of Hexter's letter of October 8, 1975, constitutes or was intended as an acknowledgement of any indebtedness of this Defendant to Hexter. *Said letter was sent by Plaintiff to Defendant with enclosures attached thereto, which enclosures were the three aforesaid checks* and statements outlining the manner in which the anticipated loan funds through Horowitz were to be disbursed. [Emphasis added.]

It has long been the law in Texas, as stated by this court in *Bernstein v. Hilton*, 45 S.W.2d 643, 645 (Tex.Civ.App.—Dallas 1931, no writ), "It is not necessary for either party to prove that which is distinctly alleged by the adverse party. . . . Each party could without reading it as evidence, avail himself of whatever admissions were made in the pleading of his adversary, without admitting anything alleged therein favorable to the party pleading." In the case before us it was not necessary for appellee to authenticate the documents admitted in appellant's pleading or ask him if he received the letter in question and what he did with the three checks which were therein enclosed. Although appellant contends that the letter does not disclose the entire and true agreement between the parties, he has consistently acknowledged he received the letter together with the checks and wrote and signed the note at the bottom of the October 8, 1975 letter. Accordingly, each of his points of error complaining of improper admission of either of these copies is overruled.

Appellant primarily complains of the exclusion of the testimony by attorney J. Holt Smith, the testimony of appellant, and several exhibits which relate to the subject matter in the letter. We overrule his points because first, we hold the letter agreement is clear and unambiguous as a loan from Hexter to O'Hara. We did not read the letter as containing any condition precedent because, even if the instruments referred to were not prepared, O'Hara would still be liable to repay the amount advanced to him by the checks mentioned in the letter. Second, any error in excluding this evidence is harmless because, even if all inferences are drawn in appellant's favor, it does not raise a jury issue as to whether the parties made a subsequent agreement relieving appellant of that obligation.

The record shows that J. Holt Smith had undertaken to act as attorney for both Hexter and appellant in regard to the option agreement mentioned in the October 8 letter, and had filed the original answer for

O'Hara in this lawsuit. Appellee's stated objections to his testimony, which the trial court sustained, are that it violates the attorney-client privilege, the parol evidence rule, and the Dead Man's Statute. The part of Smith's testimony which the jury did not hear is in a bill of exception.

Although we are inclined to agree that appellee's stated objections were not well taken, we conclude that excluding this evidence was not reversible error. Testifying before the jury, Smith told of acting as attorney for O'Hara and Hexter in a real estate transaction dealing with the Texas & Pacific Railway Building in Fort Worth and their efforts after October 8, 1975, to obtain a commitment for a loan. On bill of exception, there was much testimony describing O'Hara's option to buy the building and Hexter's purchase of fifty percent interest therein from O'Hara, together with the preparation and execution of documents in the ill fated efforts to get this transaction funded.

We find no support in any of this testimony for appellee's contention that O'Hara was not obligated to repay the money, which by the terms of the letter, was advanced to him as a "loan." It is true that Smith testified Hexter never told him he made any loan to be repaid by O'Hara nor asked Smith to prepare any documents of such loan. Further, Smith said his understanding was that repayment of the money Hexter advanced in connection with the transaction, plus $100,000, was to be supplied by the loan from Home State Savings Association. Hexter never expressed to him the view that O'Hara was to repay the loan or that O'Hara owed him any money. Smith also testified concerning a telephone conference between himself, O'Hara, Hexter and a man named Weiner, a loan broker for Horowitz Funding. When asked about any discussion in that conference call regarding the delivery of the checks identified in the October 8th letter, he testified it was a "heated discussion and I'm a little fuzzy on it." Continuing, he testified:

A Well, he stated that the checks were delivered because he felt that it

was—that Horwitz Funding was an honorable institution and would honor their commitment to lend the money and therefore he didn't require that the letter I had prepared to be signed. As you recall, the letter that I prepared was to the effect that they would guarantee funds would be made available on this loan.

We hold Smith's testimony before the jury and on the bill of exception, combined, fails to raise an issue of fact for the jury's determination because it does not tend to show any agreement that appellant was not liable for the funds advanced to him. And as set forth in *Otto v. Otto*, 438 S.W.2d 587, 591 (Tex.Civ.App.—San Antonio 1969, no writ): "Error in admitting or excluding evidence will be reversible error only if the record as a whole affords substantial basis for the reasonable belief that the admission or exclusion of such evidence may have caused the rendition of an improper judgment."

 Appellant next complains of the exclusion of testimony of appellant himself. First, he contends the Dead Man's Statute should not apply to testimony concerning transactions with Hexter because Hexter's exhibits were offered by appellee without authentication in reliance on O'Hara's pleading admissions, which was in effect a waiver of the statute by calling O'Hara to testify. We disagree. Reliance on O'Hara's pleading admissions was not a waiver of the Dead Man's Statute because appellee in no way called appellant to testify by reliance on appellant's pleadings. Appellant also claims the Dead Man's Statute was waived because Hexter testified at the first trial of this case and his testimony was available to appellee at this trial although it was not offered. He argues appellant should therefore be able to controvert this testimony in view of the rule that if a decedent testified at a former trial, the opposing party may testify at a proceeding after decedent's death to contradict decedent's prior testimony. *Griffin v. Griffin*, 306 S.W.2d 196, 200 (Tex.Civ.App.—Waco 1957, writ dism'd). We again disagree. Af-

ter the judgment of the first trial was reversed and the cause was remanded for the trial involved in this appeal, Hexter's testimony was not introduced. Appellee received no unjust advantage from Hexter's testimony at the former trial. We hold that by testifying at that trial, Hexter did not waive the statute with respect to opposing testimony offered after his death.

■ Appellant further complains of the exclusion of his testimony concerning the delivery of the checks to Horowitz and Home Savings, his intent in adding his own memorandum on the letter and the incompleteness of the instrument. Because we have found the agreement unambiguous, the testimony concerning intent and whether the agreement was complete was properly excluded under the parol evidence rule. The testimony concerning delivery of the checks by O'Hara to Horowitz Funding Corporation and Home States Savings Association, however, is not a transaction with the decedent, and therefore, not barred by Dead Man's Statute, the only objection made to its admission. Although this evidence was improperly excluded, its exclusion is harmless because it does not raise a jury issue. The delivery of these checks did not affect appellant's liability to repay the loan.

Appellant's remaining points concerning the evidence relate to the exclusion of certain exhibits offered at trial and in the bill of exception. Appellee objected to these exhibits under the parol evidence rule and the Dead Man's Statute. We do not discuss each exhibit individually because none of them would raise a jury issue because they do not show an agreement between the parties which changes appellant's liability on the loan agreement.

We have addressed appellant's points concerning error in granting the instructed verdict because we have held the letter unambiguous and have found the evidence does not raise a jury issue concerning a subsequent agreement. Appellant's point concerning pre-judgment interest is waived because it is not briefed. *Lott v. Lott,* 370 S.W.2d 463 (Tex.1963). His points com-

plaining of the overruling of two special exceptions to appellee's pleading are without merit.

Affirmed.