**PEAVY–MOORE LUMBER CO., Inc., v. DUHIG et al.**

No. 3288.

Court of Civil Appeals of Texas. Beaumont.

June 15, 1938.

Rehearing Denied Sept. 20, 1938.

A. M. Huffman, of Beaumont, for appellant.

Bruce & Bruce, K. W. Stephenson, and Oscar C. Dancy, Jr., all of Orange, for appellees.

WALKER, Chief Justice.

On the 2nd day of May, 1874, the Josiah Jordan survey of 640 acres of land in Orange County was patented to Alexander Gilmer as assignee of Josiah Jordan. On the 27th day of June, 1907, by their general warranty deed, Mrs. C. C. Gilmer, a feme sole, and W. H. Stark, sole executor of the estate of Alexander Gilmer, conveyed to B. M. Talbot and W. J. Duhig 574⅜ acres of the Josiah Jordan survey, subject to the following reservation: "It is fully understood and agreed that mineral rights are reserved in some of the deeds to Alexander Gilmer conveying portions of the premises herein conveyed and all such reservations of mineral rights are hereby recognized and considered valid and reserved herein. It is further agreed and understood that an undivided one-half (1/2) of the minerals of whatever nature and kind is hereby reserved in all of the remaining portions of said property and rights of ingress and egress in and over said land for the purposes of exploiting and developing the same for oil and other minerals is reserved herein."

Subsequently, Duhig acquired Talbot's interest in the land and by his warranty deed, dated the 21st day of October, 1912, conveyed it to Miller-Link Lumber Company, a corporation, subject to the following reservation: "But it is expressly agreed and stipulated that the Grantor

herein retains an undivided onehalf ½ interest in and to all the minerals rights or minerals of whatever nature or description in and on said land."

Through receivership proceedings, the Miller-Link Lumber Company's title was transferred to appellant, Peavy-Moore Lumber Company. On the 14th day of May, 1928, in the district court of Orange County, appellee, Mat Lambright, recovered a personal judgment against Duhig for the sum of $641.66. Under execution on that judgment, the sheriff of Orange County, by his deed dated the 2nd day of October, 1928, transferred to Lambright Duhig's interest in the following land: "An undivided one-half (½) interest in and to all the mineral rights and minerals of whatsoever nature or description in and to the following described tract of land." (Here follows a description of the land conveyed to Talbot and Duhig by the Stark-Gilmer deed described above.)

On the 2nd day of August, 1935, Mrs. W. J. Duhig and Wm. Gordon Duhig, as the widow and only child of W. J. Duhig, deceased, executed their power of attorney to appellee, K. W. Stephenson, authorizing him to enter upon and take possession for them, and in their name, of all right, title, interest, and estate in the Josiah Jordan survey. Acting under his power of attorney, on the 17th day of August, 1935, appellee, Stephenson, for himself and Mrs. Duhig and Wm. Gordon Duhig, instituted suit in trespass to try title against appellee Lambright, in the district court of Orange County, to recover the title and possession of the Josiah Jordan survey.

On the 13th day of November, 1936, appellant, Peavy-Moore Lumber Company, instituted this suit in the district court of Orange County against appellees, Stephenson, Mrs. Duhig, Wm. Gordon Duhig, and Lambright, to recover the 574⅜ acres of the Josiah Jordan survey described above. Appellees answered by pleas of not guilty. The trial was to the court without a jury. On the trial it was agreed that the suit against appellee Lambright by the other appellees had been dismissed. The judgment was that appellant recover of and from the appellees the title and possession of the land in controversy, subject to the further order and decree that "as to all the minerals and mineral rights in, on and under" the land in controversy appellant recover "nothing" as against appellees "or either of them". From the judgment appellant has duly perfected its appeal to this court.

Opinion.

We think the court erred in its construction of Duhig's deed to Miller-Link Lumber Company. The lower court gave the following construction to the deeds in the chain of title: Miller-Link Lumber Company, when it took its deed from Duhig, knew that a half interest in the mineral rights was owned by the estate of Alexander Gilmer; Duhig by his deed "retained", that is, reserved for himself, a half interest in the mineral rights; therefore, by the very language of its chain of title appellant was advised that under its deed from Duhig it was acquiring no interest in the mineral rights, but only the surface rights. The answer to this contention is that Duhig did not so write his deed. For the following reasons it must be said that Duhig conveyed to Miller-Link Lumber Company an absolute fee simple title to the land, reserving only an undivided one-half interest in the mineral rights:

1st. The deed by its express terms purported to convey all the interest in the land except the reserved one-half interest in the minerals. If the theory of the judgment be accepted, then the granting clause, to the extent that it purported to convey an interest in the mineral rights, must be destroyed; the following proposition from 14 Tex.Jur. 915, denies that construction: "A sound rule of construction requires an interpretation under which the deed will be valid and operative in preference to one which will nullify it."

2nd. If there is any ambiguity in the deed, it must be resolved in favor of Miller-Link Lumber Company. Duhig owned a half interest in the mineral rights; he purported to convey a half interest in the mineral rights; it was necessary that he reserve or "retain" a half interest in the mineral rights to protect his warranty. The presumption is that he was dealing in good faith with his grantee, and had the right and power to convey, and did convey the interest covered by the language of his deed. Supporting this conclusion we quote the following rule from 14 Tex.Jur. 916:

" 'The language of a deed is the language of the grantor, and if there is any doubt as to its construction, it should be resolved against him.'

"If it be conceded that there is ambiguity in a deed, and that it is susceptible of two constructions, that one will be adopted that is most favorable to the grantee. This is a well-settled rule applicable to many provisions of doubtful meaning in deeds as well as in contracts."

 3rd. The intention of the parties gathered from the language of the deed controls its construction, and, when ascertained, must be effectuated. The rule on this point is thus stated by 14 Tex.Jur. 910: "As in the case of other contracts in writing, the cardinal rule for the construction of deeds is that the intention of the parties is to be ascertained and, if not forbidden by law, effectuated. That construction which is most consistent with the intention of the grantor, as gathered from the terms of the conveyance, is accepted as the true one."

When the Duhig deed is construed by its own language it is not ambiguous. It purported to grant to Miller-Link Lumber Company an absolute fee simple title to all interest in the land except a one-half interest in the minerals. This rule must be given effect. To accept the theory of the judgment, Duhig's deed conveyed only the surface rights in the land, when the very language of the granting clause, construed in connection with the reservation, is clearly to the effect that Duhig was conveying to Miller-Link Lumber Company an undivided one-half interest in the minerals.

4th. We quote the following rule from 14 Tex.Jur. 930: "The general rule is that a deed will pass whatever interest the grantor may have in the land, unless words are used showing an intention to convey a less estate. And, where the granting clause is apt to transfer all the interest of the grantor, an intention to convey a less estate than the grantor has is not manifested by a recital of the grantor's source of title. Such a recital is usually regarded as mere descriptive matter which does not restrict the granting clause."

As Duhig owned a half interest in the mineral rights and as his deed purported to convey a half interest, under this rule his deed must be construed as conveying the interest owned by him.

5th. This was not a suit on breach of warranty, but was on the theory that Duhig's deed conveyed the very interest it purported to convey, and to claim the interest included in the granting clause of the deed. In ascertaining the intent of the parties it is the duty of the courts to give effect to all the language of the deed. Under his warranty, Duhig cannot say that he did not intend to convey the interest covered by the granting clause. We are invoking the following rule from 12 Tex. Jur. 76: "The liability of the warrantor extends, however, to all cases involving a failure of title to land purported to be conveyed by the terms of the deed. And the defense that the land lost was never intended to be conveyed, but was included in the description by the grantor by mistake, has been held to be untenable where the alleged mistake is nothing more or less than the grantor's own culpable negligence."

This case is controlled by Klein v. Humble Oil & Refining Co., Tex.Civ.App., 67 S.W.2d 911, affirmed on this point by the Supreme Court, 126 Tex. 450, 86 S.W.2d 1077.

From what we have said it follows that the judgment of the lower court must be reversed and judgment here rendered in favor of appellant, and it is accordingly so ordered.

Reversed and rendered.