

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

April 27, 1990

Mr. Arnold W. Oliver, P.E.    Opinion No. JM-1170
Engineer-Director
State Department of Highways  Re: Conveyance of land from the
  and Public Transportation   Texas Department of Corrections
DeWitt C. Greer State         to the State Department of
  Highway Building            Highways and Public Transporta-
11th & Brazos                 tion (RQ-1951)
Austin, Texas 78701-2483

Dear Mr. Oliver:

You ask about the construction of a bill requiring the Department of Corrections to transfer certain real property to the Department of Highways and and Public Transportation (hereinafter Highway Department). Specifically, you ask whether the bill authorized the Department of Corrections to reserve the mineral rights in the land in question or whether the bill required the department to transfer title in fee simple.

In 1987 the legislature adopted Senate Bill 52, which provides in part as follows:

> SECTION 1. CONVEYANCE OF PROPERTY. (a) On behalf of the state, the Texas Board of Mental Health and Mental Retardation and the Texas Department of Corrections shall sell to the State Department of Highways and Public Transportation the tracts of state-owned land that are described by Section 2 of this Act for a total amount of $120.6 million.

> (b) Before August 31, 1988, the State Department of Highways and Public Transportation shall purchase the land for a total amount of $120.6 million. All the land that qualifies for the expenditure of constitutionally dedicated funds shall be purchased from the constitutionally dedicated

> portion of the state highway fund.[1]   The remainder shall be purchased from the statutorily dedicated portion of the state highway fund.

Acts 70th Leg., 2d C.S., ch. 2, § 1, at 5 (footnote added).

You state that the Highway Department tendered the purchase price to the Board of Mental Health and Mental Retardation (hereinafter MHMR) and the Department of Corrections. MHMR delivered a deed conveying, without reservation, the property described in Senate Bill 52. The Department of Corrections, however, refused to execute a deed transferring title in fee simple and took the position that the legislature did not intend that the Department of Corrections transfer the mineral rights in the land in question.

---

1. Article VIII, section 7-a, of the Texas Constitution provides that revenues from motor vehicle registration fees and taxes on motor fuels and lubricants shall be used only for certain specified purposes, most of which have to do with financing of roads and highways. Article VIII, section 7-b provides:

> All revenues received from the federal government as reimbursement for state expenditures of funds that are themselves dedicated for acquiring rights-of-way and constructing, maintaining, and policing public roadways are also constitutionally dedicated and shall be used only for those purposes.

Section 1(b) of Senate Bill 52 restates the constitutional requirement that the Highway Department may expend funds from the sources described in those constitutional provisions only for purposes set out in those constitutional provisions. We note that section 4(b) of Senate Bill 52 would allow the Highway Department to lease back to TDC for $1 a year any portion of the land acquired from TDC pursuant to Senate Bill 52. The constitutionality of such a lease would be in question if the Highway Department used funds subject to section 7-a or section 7-b of article VIII to purchase the land from TDC.

The legislature has exclusive control over the disposition of state-owned land.  See Lorino v. Crawford Packing Co., 175 S.W.2d 410, 414 (Tex. 1943); Conley v. Daughters of the Republic, 156 S.W. 197, 200 (Tex. 1913); Attorney General Opinion JM-242 (1984).  Senate Bill 52 states that the Department of Corrections "shall sell to the State Department of Highways and Public Transportation the tracts of state-owned land" described in the bill.  The bill contains no language indicating that the Department of Corrections should retain any interest in that land.  In grants of land, reservations of mineral interests must be by clear language.  Sharp v. Fowler, 252 S.W.2d 153 (Tex. 1952).  In Texas, under both case law and statutory law, a grant of land will be construed as a grant of an estate in fee simple unless the conveyance is expressly limited.  City of Stamford v. King, 144 S.W.2d 923 (Tex. Civ. App. - Eastland 1940, writ ref'd); Prop. Code § 5.001(a).  We think the courts would apply an analogous rule to construction of a statute requiring one state agency to transfer real property to another state agency.  Therefore, we do not think the Department of Corrections was authorized to reserve to itself the mineral estate in the land described in Senate Bill 52.  See generally Attorney General Opinion MW-207 (1980) (statutes governing Department of Corrections indicate legislative intent to regulate closely disposition of land under control of Department of Corrections); cf. Acts 1930, 41st Leg., 5th C.S., ch. 67, at 215 (authorizing Department of Corrections to sell certain property, but requiring that oil, gas, and mineral rights be reserved to state); Attorney General Opinion JM-242 (statute permitting board of regents "to transfer and convey" land under terms and conditions deemed advisable by regents allowed regents to convey easement or fee simple title).

Two arguments have been raised in support of TDC's position.  One is that the amount to be paid by the Highway Department for the land held by TDC is the value the General Land Office placed on the surface estate in that land.  However, there is no requirement that a state agency receive "adequate compensation" when state property in its custody is transferred to the custody of another state agency.  See Attorney General Opinion WW-1273 (1962) (land acquired in name of county for construction of state highways is state property regardless of fact that deed is made out to county); see also Tex. Const. art. I, § 17 (requiring payment of adequate compensation when private property is taken for public purposes).

The other argument is that TDC's retention of the mineral rights is required by the following Appropriations Act rider:

> No state lands shall be sold unless the mineral rights are retained by the state, unless impractical.

General Appropriations Act, Acts 1989, 71st Leg., ch. 1263, art. V, § 83; General Appropriations Act, Acts 1987, 70th Leg., 2d C.S., ch. 78, art. V, § 79. Regardless of whether TDC or the Highway Department holds title to the mineral rights in the land in question, those rights will be held by the state. Consequently, that rider has no application to your question.

### S U M M A R Y

A bill requiring the Department of Corrections to transfer certain real property to the Department of Highways and Public Transportation did not authorize the Department of Corrections to reserve to itself the mineral estate in that land.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General